UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

-----------------------------------------------------------

Sonya Robinson-Gibbs on behalf of herself
and those similarly situated,

               Plaintiffs,

v.                            NO.  1:13-cv-00182-M-PAS

RBS Citizens, N.A., d/b/a CCO Mortgage,
Charter One, and Citizens Bank,

               Defendant.

-----------------------------------------------------------

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

Plaintiff Sonya Robinson-Gibbs ("Plaintiff") on behalf of herself and all other opt-in Plaintiffs and the putative Rule 23 classes, respectfully moves this Court for an Order granting Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement.  With this unopposed motion, Plaintiff asks the Court to (1) preliminarily approve the parties' settlement as fair, reasonable, and adequate; (2) certify the proposed settlement classes pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process; (3) for settlement purposes, appoint Nichols Kaster, PLLP, Winebrake & Santillo, LLC, and Donelon, P.C. as Class Counsel and the Named Plaintiff as Class Representative; (4) approve the parties' proposed notice of settlement (attached to Exhibit A as Exhibit 1) and proposed notice procedure; (5) set a date for Plaintiff to file a motion for final settlement approval and petition for an award of attorneys' fees and costs; and (6) schedule the Fairness Hearing.

**WHEREFORE**, Plaintiff respectfully request that the Court grant Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement.

Respectfully submitted,

Dated: October 16, 2013                    **CHARLES S. KIRWAN, ATTORNEY AT LAW**

                                            */s/Charles S. Kirwan*
                                            Charles S. Kirwan
                                            250-F Centerville Road
                                            Warwick, RI 02886
                                            T: (401) 359-1166
                                            F: (401) 336-2448
                                            E: csk@kirwanlaw.net

                                            **NICHOLS KASTER, PLLP**

                                            */s/Timothy C. Selander*
                                            Paul J. Lukas, MN Bar No. 22084X*
                                            Timothy C. Selander, MN Bar No. 0387016*
                                            4600 IDS Center, 80 South 8th Street
                                            Minneapolis, MN 55402
                                            T: (612) 256-3200
                                            F: (612) 338-4878
                                            E: lukas@nka.com
                                               selander@nka.com

                                            **WINEBRAKE & SANTILLO, LLC**
                                            Peter Winebrake, PA Bar No. 841503**
                                            R. Andrew Santillo, PA Bar No. 93041**
                                            Twining Office Center, Suite 211
                                            715 Twining Road
                                            Dresher, PA 19025
                                            T: (215) 884-2491
                                            F: (215) 884-2492
                                            E: pwinebrake@winebrakelaw.com
                                               asantillo@winebrakelaw.com

                                            **DONELON, P.C.**
                                            Brendan J. Donelon, MO Bar No. 43901**
                                            802 Broadway, 7th Floor
                                            Kansas City, Missouri 64105
                                            T: (816) 221-7100
                                            F: (816) 472-6805

2

E:  brendan@donelonpc.com

\* *admitted pro hac vice*
\*\* *pro hac vice* motion forthcoming

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2013, the foregoing **Unopposed Motion for Preliminary Approval of the Class Action Settlement** and attached **Brief in Support**, were filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Charles S. Kirwan, kirwanlaw@gis.net;
Lauren Marzullo, lmarzullo@morganlewis.com;
Paul J. Lukas, lukas@nka.com;
Samuel S. Shaulson, sshaulson@morganlewis.com;
Sarah E. Bouchard, sbouchard@morganlewis.com;
Timothy C. Selander, selander@nka.com; and
Todd S. Holbrook, tholbrook@morganlewis.com.

Parties may access this filing through the Court's CM/ECF System.

/s/Timothy C. Selander
Timothy C. Selander

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

------------------------------------------------------------

Sonya Robinson-Gibbs on behalf of herself
and those similarly situated,

         Plaintiffs,

v.                       NO.  1:13-cv-00182-M-PAS

RBS Citizens, N.A., d/b/a CCO Mortgage,
Charter One, and Citizens Bank,

         Defendant.

------------------------------------------------------------

### MEMORANDUM OF LAW IN SUPPORT
### OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
### APPROVAL OF THE CLASS ACTION SETTLEMENT

       Plaintiff Sonya Robinson-Gibbs ("Plaintiff") submits this memorandum of law in support of her unopposed motion for preliminary approval of the proposed settlement with Defendant RBS Citizens, N.A. ("RBS").  The "Stipulation and Settlement Agreement" ("Agreement") accompanies the motion.  *See* Ex. A.  For the reasons discussed herein, the Court should preliminarily approve the Agreement and the notice protocols described therein, appoint the law firms of Nichols Kaster, PLLP, Winebrake & Santillo, LLC, and Donelon, P.C. to serve as class counsel, and certify the proposed settlement classes.

## I.     BACKGROUND

### A.     Plaintiff's Legal Claims and Relevant Procedural History

      Plaintiff Sonya Robinson-Gibbs filed this case against her former employer, RBS, in the U.S. District Court for the District of Rhode Island on March 21, 2013.  *See* Doc. 1.  Plaintiff and

eleven other individuals originally opted-in to another action against Defendant titled *Ginter, et al. v. RBS Citizens, N.A., d/b/a CCO Mortgage, Charter One, and Citizens Bank*, Case No. 1-12-cv-00008-M-PAS ("*Ginter*"). *See* Doc. 1-1. During the *Ginter* litigation, Defendant agreed to toll the statute of limitations for Plaintiff Robinson-Gibbs and the eleven other individuals beginning on the date each opted-in to *Ginter*.

Plaintiff worked as a home loan advisor and account executive ("HLA") for RBS from approximately January 2009 to January 2011. She brought this suit on behalf of herself and other similarly situated HLAs seeking overtime pay under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Wage Act ("OMFWSA"), and the Rhode Island Minimum Wage Act ("RIMWA"). In her Complaint, Plaintiff alleges that RBS misclassified her and all other HLAs as exempt and that, as a result, she and all other HLAs are entitled to overtime pay for weeks in which they worked more than forty hours in a workweek.

RBS filed its Answer on April 24, 2013, denying the allegations in the Complaint. *See* Doc. 9. In its Answer, RBS averred that it properly classified Plaintiff and all HLAs as exempt employees under a number of different exemptions to the overtime pay requirements, including the administrative, outside sales, retail sales, executive, professional, highly compensated, and combination exemptions. Pursuant to 29 U.S.C. § 259, RBS also plead an affirmative defense seeking blanket immunity from liability on the grounds that its "alleged failure to pay Plaintiff or any putative collective action member overtime wages, if at all, was in good faith conformity with and in reliance on an administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the Wage and Hour Division of the United States Department of Labor." Doc. 9 at 9.

After participating in a Rule 26(f) conference, the parties agreed to attempt to settle the

case through private mediation.  As part of the agreement to mediate, the parties entered into a

tolling agreement, which included an agreement to toll the FLSA statute of limitations for

putative opt-in Plaintiffs between May 31, 2013, and August 30, 2013.

**B.    RBS's Mortgage Business and its HLAs**

RBS does business in the United States under the "Citizens Bank" and "Charter One"

brand names.  It is a subsidiary of Citizens Financial Group, Inc., a financial holding company

and Delaware corporation with its principal place of business located in Providence, Rhode

Island.  In total, RBS operates more than 1,500 bank branches in twelve states.  RBS provides

financial services to consumers, including but not limited to home purchase financing,

refinancing, personal banking, and loan and mortgage processing.

RBS employs HLAs to assist consumers with RBS mortgage loan products.  Until April

2011, RBS classified its HLAs as exempt and paid them on a salary plus commission basis.

During that time period, RBS did not track HLAs' hours worked and did not pay them overtime

when they worked more than 40 hours in a workweek.

As part of their duty of assisting customers with RBS mortgage loan products, HLAs

collected and analyzed information and documents from customers to complete the loan

package.  Once complete, they submitted it to RBS's mortgage underwriters for approval.  HLAs

had no underwriting authority, and as a result, RBS required all loans to be reviewed and

approved by the underwriting department.  If a loan was approved, HLAs worked with the

customer to prepare for the closing.  If a loan was not approved, HLAs worked with the customer

to cure any deficiencies in the loan package or attempted to offer the customer a different loan.

In April 2011, RBS HLAs became eligible for overtime compensation.

**C.    Mediation**

The parties agreed to mediate without a neutral mediator in light of the productive

settlement negotiations that took place in *Ginter*.  In anticipation of the mediation, RBS produced payroll data to Plaintiff's Counsel including: (i) the weeks worked and annual compensation amounts for the relevant statutory period for each named and opt-in plaintiff; and (ii) the weeks worked and number of potential Rule 23 class members for the states of Ohio and Rhode Island. Selander Decl. ¶ 4.  This data, combined with estimates of hours worked by the named and opt-in Plaintiffs, allowed Plaintiff's Counsel to create a damages model detailing RBS's potential exposure if the mediation was unsuccessful and Plaintiff prevailed on the merits.  *Id.*

On July 15, 2013, the parties participated in a mediation session in New York, New York.  *Id.* ¶ 3.  That same day, the parties executed a four page memorandum of understanding resolving HLAs' claims under the FLSA and the respective overtime laws for the states of Ohio and Rhode Island for a total of $295,000.00.[1]

### D.    **The Agreement**

The Settlement Agreement's material terms are summarized below:

#### 1.    *The Settlement Classes*

For purposes of settlement only, the parties have agreed to certification of the following State Law Classes pursuant to Federal Rule of Civil Procedure 23(b)(3) under the laws of Ohio and Rhode Island:

> All individuals who were employed by RBS Citizens, N.A. in Ohio
> or Rhode Island in the position of Home Loan Advisor or Account
> Executive at any time between May 31, 2010 and May 1, 2011.

Agreement at ¶ 1.37.  The above Classes consist of 90 individuals (or "Class Members").  In addition, those Class Members who have filed a consent with the Court to join this litigation

---

[1] Plaintiff subsequently filed an Amended Complaint which asserted the original FLSA claim as well as Rule 23 claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA") and the Rhode Island Minimum Wage Act ("RIMWA").  *See* Doc. 16.

pursuant to 29 U.S.C. §216(b) or who complete a Consent to Join the Settlement Form will also release their claims under the FLSA. *Id.* at ¶¶ 1.31, 1.35; *see also* Form 1-A. In total, the parties' Settlement Agreement involves up to 90 current and former HLAs.

### 2.    *The Payments*

Under the settlement, RBS will contribute a total of **$295,000.00** to settle this action on a class-wide basis. *See* Agreement at ¶ 1.21. The Agreement, if approved, will divide the **$295,000.00** as follows: (i) $205,250 will be paid to Class Members representing claimed unpaid compensation; (ii) subject to Court approval, $3,000 in enhancement awards will be distributed to Plaintiff Robinson-Gibbs in recognition of her effort on behalf of the class and her enhanced litigation position; (iii) subject to Court approval, $73,750 will be paid to Plaintiffs' Counsel for attorney's fees; (iv) approximately $3,000 shall be paid to Plaintiffs' Counsel for accumulated litigation costs and expenses; and (v) $10,000 shall be paid for the retention of a third-party claims administrator.[2]

### 3.    *The Release*

In exchange for the above consideration, Class Members who do not exclude themselves from the settlement will release RBS from all wage and hour claims including: (a) all state law claims pled in the Complaint; (b) any and all claims related to overtime or overtime pay, whether known or unknown, under applicable state laws arising from employment as an HLA; (c) any and all claims whether known or unknown and no matter how denominated, under applicable state laws for minimum wage, deductions from pay, meal and rest breaks; and retaliation; (d) all

---

[2]   As part of the final approval motion, Plaintiffs' Counsel will provide the Court with case law supporting the payment of the enhancement awards and contemporaneous time and expense records establishing the reasonableness of the proposed fee and expense recovery. Because the settlement is not contingent on the Court's approval of the enhancement award or the requested fees/expenses, it is not necessary to address these matters at the preliminary approval stage.

claims for penalties (including late payment penalties); and (e) liquidated damages, interest, attorneys; fees, or litigation expenses under applicable state laws.  *See* Agreement at ¶ 1.36. Importantly, Class Members do ***not*** release other types of legal claims, and only Class Members who opt-in to the settlement waive any claims under the FLSA.  *See id* ¶ 1.35.[3]

## II.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.      Standard for Granting Preliminary Approval

Federal courts must approve class action settlements and ensure that settlement class members receive sufficient notice of the settlement and that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The approval of a class action settlement entails a two-step process.  Initially, the court makes a preliminary determination of the settlement's fairness. If the court preliminarily determines that the settlement is fair, settlement class members are notified of the settlement and a final fairness hearing is scheduled.  Later, at the final fairness hearing, the court undertakes a more thorough evaluation of the settlement's fairness, reasonableness, and adequacy.  *See generally Baptista v. Mutual of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240 (D.R.I. 2012); *Trombley v. Bank of America Corp.*, 2011 WL 3740488 (D.R.I. Aug. 24, 2011) ("*Trombley II*"), *Trombley v. Bank of America Corp.*, 2011 WL 3273930 (D.R.I. July 29, 2011) ("*Trombley I*").

The *Manual for Complex Litigation* (Fourth) (2006) provides a framework for the court's preliminary evaluation of a proposed class action settlement:

> Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs,

---

[3] The named Plaintiff, however, agreed to provide RBS with a general release.  *See* Agreement at ¶ 1.8.

> motions, or informal presentations by parties.  If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).  The judge must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* § 21.632; *see also In re: Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2000).

At the preliminary approval stage, a "court can only determine whether the proposed settlement appears to fall within the range of possible final approval."  *Trombley II*, 2011 WL 3740488 at *4; *see also In re: Lupron(R) Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass. 2004) (preliminarily approving class settlement and holding that "the proposed settlement amount is sufficiently within the range of reasonableness").  The Court does not, however, determine whether a proposed settlement will ultimately receive final approval as fair and reasonable as part of the preliminary approval stage.  *See Trombley II*, 2011 WL 3740488, at *4 (stating that "the parties' request for a ruling that the claims administration and distribution plan in the Settlement Agreement are fair and adequate is premature" at the preliminary approval stage).  As this Court has previously observed:

> A proposed settlement of a class action may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.

*Trombley I*, 2011 WL 3273930, at *5 (internal quotations omitted).

Instead, a court will later determine whether a proposed settlement is "fair, adequate, and

reasonable" after notice has been provided to all potential class members during a fairness

hearing.  *See Durrett v. Housing Auth. of the City of Providence*, 896 F.2d 600, 604 (1st Cir.

1990); *see also Trombley II*, 2011 WL 3740488, at *4 ("All findings and rulings for purposes of

preliminary approval are contingent on the parties achieving successful final approval of the

Settlement Agreement."); *In re: Traffic Executive Assoc.*, 627 F.2d 631, 634 (2d Cir. 1980) (at

preliminary approval stage court determines "what might be termed probable cause' to submit

the proposal to Settlement Class members and hold a full-scale hearing as to its fairness"); *In re:

Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (purpose of

preliminary approval is "to ascertain whether there is any reason to notify the Settlement Class

Members of the proposed settlement and to proceed with a fairness hearing"); *In re: Mid-Atlantic

Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (court does not conduct

"definitive proceeding on the fairness of the proposed settlement" and "must be careful to make

clear that the determination permitting notice to members of the class is not a finding that the

settlement is fair, reasonable and adequate").

　　When reviewing class action settlements, courts are mindful of the "clear policy in favor

of ***encouraging settlements***."  *Durrett*, 896 F.2d at 604 (emphasis supplied); *see also In re:

Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding

public interest in settling class action litigation, and it should therefore be encouraged.").

Moreover, the First Circuit has stated that "there is a presumption in favor of settlement" when

the record demonstrates that "sufficient discovery has been provided and the parties have

bargained at arms-length."  *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041,

1043 (1st Cir. 1996); *see also In re: Auto. Refinishing Paint Antitrust Litig.*, 2003 U.S. Dist

LEXIS 4641, *2-3 (E.D. Pa. Mar. 17, 2003) (the court should "give deference to the

recommendations of experienced attorneys who have engaged in arms-length settlement negotiations."); *In re: Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery").

### B.    The Proposed Settlement Warrants Preliminary Approval

The Court should preliminarily approve the proposed settlement because it represents an excellent result in light of the facts and circumstances of this litigation.

First, the settlement enables Plaintiff and the Class Members to avoid significant litigation risks regarding at least three important issues:  (1) whether the subject HLAs are overtime-exempt; (2) the extent to which these HLAs actually worked overtime hours; and (3) the chance that the Court would later rule that the HLAs are unable to proceed on a class/collective basis.   At this early state of the litigation, the ultimate determination of these issues remains uncertain.

Second, while every case is different, the average gross payout of approximately $2,280 per class member compares favorably to other recent settlements in which employees allege that they were misclassified as overtime-exempt.  *See*, *e.g.*, *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *10 (M.D. Pa. Jan. 7, 2013) (granting final approval to settlement in which allegedly misclassified Assistant Store Managers received average payouts of $1,845).

 Plaintiff's Counsel, who have resolved many overtime rights cases on both a class-wide and individual basis, are convinced that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements.   The settlement negotiations were conducted fairly and at arm's-length and after the exchange and rigorous analysis of ample data. Moreover, the timing of the settlement promotes judicial economy and enables settlement Class Members to recover money without undue delay.

In sum, the settlement easily clears the requirements for preliminary approval.

## III.    THE COURT SHOULD APPROVE THE NOTICE PLAN

When a class action lawsuit is settled, "[t]he court must direct to class members notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Moreover,

> [f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, the Agreement requires that, within fifteen (15) business days after the Preliminary Approval Order, the Notice Form will be mailed to each Class Member's last known address. *See* Agreement at ¶¶ 1.26. Prior to this mailing, the third-party administrator will perform an address check to ensure accuracy of the addresses that are utilized. *Id.* at ¶ 2.5.4. Returned forms will go through a thorough re-mailing process. *Id.* at ¶ 2.5.8.

In addition the Notice Form, which is attached to the Agreement as Exhibit 1, clearly provides Class Members with the following: (a) a description of the Class; (b) a description of the litigation; (c) a description of the proposed settlement and of the scope of the release; (d) the identification of Class Counsel; (e) disclosure of Class Counsel's anticipated request for an award of attorneys' fees, costs, and expenses; (f) an explanation of Class Members' right to be excluded from the settlement and the consequences of exclusion; (g) an explanation of the procedure and deadline for filing exclusion requests; (h) an explanation of the right to object to

the settlement; (i) an explanation of the procedure and deadline for filing objections to the settlement; and (j) an announcement of the time and location of the final approval hearing.

The above-described Notice Form and notice process fulfills Rule 23's notice requirements.  In fact, such individualized mailing has been recognized as the best notice that can practicably be given to absent class members.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In connection with preliminary approval, Plaintiff requests that the Court certify for settlement purposes the following Settlement Class, as defined in the Agreement under the laws of Ohio and Rhode Island:

> All individuals who were employed by RBS Citizens, N.A. in Ohio or Rhode Island in the position of Home Loan Advisor or Account Executive at any time between May 31, 2010 and May 1, 2011.

As already explained, the class includes 90 individuals.  As discussed below, the proposed class should be certified for purposes of settlement:

### A.    Class Certification Under Rule 23

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various "important objectives," such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims."  *In re: GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig*, 55 F.3d 768, 783-84 (3d Cir. 1995) (internal quotations omitted).  "'Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages,

aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* at 784 (quoting *Deposit Guarantee Nat'l Bank v Roper*, 455 U.S. 326, 339 (1980)).

As the First Circuit Court of Appeals has observed:

> The class certification prerequisites should be construed in light of the underlying objective of class actions. Rule 23(b)(3) is intended to be a less stringent requirement than Rule 23(b)(1) or (b)(2). The core purpose of Rule 23(b)(3) is to ***vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation***.

*Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) (emphasis supplied and internal citations omitted). Moreover, "the certification of a settlement class can provide significant benefits to class members while enabling defendants to achieve an expedited and final resolution of multiple suits." *In re: Lupon(R) Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

Before granting preliminary approval to a class action settlement agreement, a court must ensure that the elements of Rule 23(a) and (b) are met in order to protect absent class members. *See Tardiff v. Knox County*, 365 F.3d 1, 4 (1st Cir. 2004); *Trombley I*, 2011 WL 3273930, at *2. Here, Plaintiffs seek class certification under Rule 23(b)(3), which provides:

> A class action may be maintained if . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23.

### 1.      *Rule 23(a)(1)'s Numerosity Requirement is Satisfied*.

Rule 23(a)(1)'s numerosity requirement is met "if the class is so large that joinder of all the class members would be impracticable." *Trombley I*, 2011 U. WL 3273930, at *2. Notably, "[i]mpracticability does not mean impossibility, but only the difficulty or inconvenience of

joining all members of the class." *Adver. Specialty Nat'l Assoc. v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956) (internal quotations omitted).  District courts frequently observe that the numerosity requirement "is not a difficult burden to satisfy," *In re: Carbon Black Antitrust Litig.*, 2005 WL 102966, at *9 (D. Mass. Jan. 18, 2005).   Here, numerosity is satisfied because the class includes approximately 90 individuals.

### 2.    *Rule 23(a)(2)'s Commonality Requirement is Satisfied*

Commonality is met where "the claims of the class '[] depend upon a common contention . . . [which] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Trombley I*, 2011 WL 3273930, at *3 (*quoting Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)).   District Courts within the First Circuit have described the Rule 23(a)'s commonality requirement as "a low bar" that is "generally given [] a permissive application."  *In re: New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

Here, Plaintiff contends that the commonality requirement is satisfied because, *inter alia*, Class Members were subjected to the same overtime-exempt classification and, during the relevant time period, generally performed their job duties pursuant to similar policies and procedures.  As such, the success or failure of each Class Member's claim generally turns on the common question of whether the overtime-exempt classification violates the FLSA and the analogous state overtime laws.  Several federal courts have held that Rule 23's commonality requirement is fulfilled in cases where employees in the banking industry have asserted similar state law overtime misclassification claims.  *See Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184  (S.D. Ohio 2012) ("Courts routinely certify misclassification cases with similar common questions because the central question of whether the employees were wrongfully classified as

16

exempt from overtime pay requirements is common to the class."); *Lyons v. Citizens Fin. Group, Inc.*, 2012 WL 5499878  (D. Mass. Nov. 9, 2012).

### 3.    *Rule 23(a)(3)'s Typicality Requirement is Satisfied*

In determining whether typicality is met, Courts must find that "the representatives' injuries arise from the same events or course of conduct as do the injuries of the class and the representatives' claims and those of the class are based on the same legal theory." *Trombley I*, 2011 WL 3273930, at *3 (internal quotations and brackets omitted).   "'[P]laintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent class members.'" *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (*quoting Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)).

Here, Plaintiff contends that typicality exists because Plaintiff and every Class Member share the same interest of recovering unpaid overtime wages based on the same legal theory: that RBS's alleged misclassification of HLAs violated the FLSA and the state overtime laws of Ohio and Rhode Island.

### 4.    *Rule 23(a)(4)'s Adequacy Requirement is Satisfied*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In determining adequacy, courts must determine that the "representative parties will not conflict with the interests of any of the class members, and that counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation." *Trombley I*, 2011 WL 3273930, at *3 (internal quotations and brackets omitted); *see also Gordon v. Corporate Receivables, Inc.*, 2010 WL 376386, at *2 (D.R.I. Jan. 27, 2010) (the adequacy analysis consists of determining whether "(a) the representative plaintiff's interests are not antagonistic to the class she seeks to represent, and (b)

that the class will be represented by qualified counsel.").

Here, Plaintiff contends that Rule 23(a)(4)'s adequacy requirement is satisfied.  As discussed in the attached Declarations of Plaintiff's Counsel Timothy C. Selander, R. Andrew Santillo, and Brendan Donelon, Plaintiff's Counsel is qualified, experienced, and generally able to conduct this litigation on behalf of the proposed classes.

Moreover, Plaintiff does not have interests that are antagonistic to other Class Members. Rather, Plaintiff and each Class Member share a common interest in recovering unpaid overtime wages.

### 5.    *Rule 23(b)(3) is Satisfied*

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy." Here, Plaintiffs contend that the claims satisfy the requirements of Rule 23(b)(3).

### a.    <u>Common Questions Predominate</u>

When "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."  *In re: New Motor Vehicles*, 522 F.3d at 23; *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requires finding that "a sufficient constellation of common issues binds class members together."); *Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.").  "[T]he existence of a common disputed issue weighs in favor of class certification, not against it."  *In re: New Motor Vehicles*, 522 F.3d at 23.

 Here, Plaintiff contends that the Rule 23(b)(3)'s predominance requirement is satisfied because all Class Members share a common set of core, predominant facts, including, *inter alia*:

- All Class Members were uniformly classified as overtime-exempt during the relevant time period;

- All Class Members were required to follow standardized training materials and uniform operational protocols; and

- Class Members were subjected to standardized payroll and timekeeping practices.

Other federal courts have found the predominance factor to be readily fulfilled in similar misclassification class actions on behalf of financial sector employees. *See*, *e.g.*, *Swigart*, 288 F.R.D. 177; *Lyons*, 2012 WL 5499878.

b.    A Class Action is Superior to Other Methods

In addition to the predominance requirement, Rule 23(b)(3) requires that the court find that a class action is superior to other available methods for the fair and efficient adjudication of the dispute.  "[A] class action [ . . . ] is superior to other methods [where there is] the clear commonality of claims and cost-sharing efficiencies of aggregating individual claims which each have a relatively limited potential recovery into a collective action."  *Gordon*, 2010 WL 376386, at *3.  There are four factors that courts utilize in determining whether superiority is met.  *See* Rule 23(b)(3).   Applying these factors, Plaintiff contends that it becomes clear that Rule 23(b)(3)'s superiority requirement is satisfied here.

First, Rule 23(b)(3)(A) counsels against class certification where individual class members have a strong interest in "individually controlling the prosecution" of separate actions. This generally arises in lawsuits involving "a high degree of emotional involvement, extremely large [individual] damages claims, and a desire to tailor trial tactics to individual needs." NEWBERG at §4:29.  This action bears none of these hallmarks.  On the contrary, because damages are relatively small for individual settlement class members compared to litigation costs, there is a strong interest in collective litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  This factor is not relevant, since no related litigation exists concerning RBS's classification of its HLAs during the relevant period.

Third, Rule 23(b)(3)(C) requires the court to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  Here, concentration of all claims in the District of Rhode Island is both efficient and desirable because RBS is headquartered in Providence, Rhode Island.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  This requirement is automatically satisfied when a case is being certified for settlement purposes.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also Trombley I*, 2011 WL 3273930, at *4 ("For purposes of a settlement class, however, any issues pertaining to management of the class during litigation need not be considered.") (internal citations omitted).

Based on the foregoing analysis, Plaintiff respectfully submits that the proposed settlement class satisfies the requirements of Rule 23(a)-(b) and should be certified for settlement purposes.

## V.    THE COURT SHOULD APPOINT NICHOLS KASTER, PLLP, WINEBRAKE & SANTILLO, LLC, AND DONELON, P.C. AS CLASS COUNSEL

A court certifying a class generally must appoint class counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A).  The Rule lists several factors for courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to

representing the class.  *See* Fed R. Civ. P. 23(g)(1)(A).  In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiff requests that Nichols Kaster, PLLP, Winebrake & Santillo, LLC, and Donelon, P.C. be appointed Class Counsel.  These firms have diligently litigated this action and the related *Ginter* action, and, after substantial investigation and analysis, negotiated a fair settlement.  Moreover, as explained in the attached Selander, Santillo, and Donelon Declarations, these firms each have substantial credentials in wage and hour class litigation.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion in its entirety and enter the accompanying proposed Preliminary Approval Order.

Dated:  October 16, 2013

**CHARLES S. KIRWAN, ATTORNEY AT LAW**

<u>/s/Charles S. Kirwan</u>
Charles S. Kirwan
250-F Centerville Road
Warwick, RI 02886
T:  (401) 359-1166
F:  (401) 336-2448
E:  csk@kirwanlaw.net

**NICHOLS KASTER, PLLP**

<u>/s/Timothy C. Selander</u>
Paul J. Lukas, MN Bar No. 22084X*
Tim C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
T:  (612) 256-3200
F:  (612) 215-6870
E:  lukas@nka.com
      selander@nka.com

**WINEBRAKE & SANTILLO, LLC**
Peter Winebrake, PA Bar No. 841503**

R. Andrew Santillo, PA Bar No. 93041**
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
T:  (215) 884-2491
F:  (215) 884-2492
E:  pwinebrake@winebrakelaw.com
     asantillo@winebrakelaw.com

**DONELON, P.C.**
Brendan J. Donelon, MO Bar No. 197776**
420 Nichols Road, Suite 200
Kansas City, MO  64112
T:  (816) 221-7100
F:  (816) 472-6805
E:  brendan@donelonpc.com

*admitted *pro hac vice*
** *pro hac vice* motion forthcoming

***Counsel for Plaintiffs and
Those Similarly Situated***