UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

---------------------------------------------------------------
Sonya Robinson-Gibbs, on behalf of herself
and those similarly situated,

        Plaintiff,

v.                                                                    NO.  1:13-cv-00182-M-PAS

RBS Citizens, N.A., d/b/a CCO Mortgage,
Charter One, and Citizens Bank,

        Defendant.

---------------------------------------------------------------

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF THE CLASS ACTION SETTLEMENT**

      Plaintiff Sonya Robinson-Gibbs, on behalf of herself and all other opt-in plaintiffs and members of the Rule 23 class, respectfully moves this Court for an Order granting Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement.  The proposed Settlement secures for the class and collective members significant monetary compensation for their claims and has been well-received.  This is evidenced by the fact that no opt-in Plaintiff or class member objected to or requested to be excluded from the Settlement, and by the fact that over 75% of the eligible Settlement Class Members agreed to participate in the settlement.

      **WHEREFORE**, Plaintiff respectfully requests that the Court grant this motion and enter the accompanying proposed order.

Respectfully submitted,

Dated: January 23, 2014		**CHARLES S. KIRWAN, ATTORNEY AT LAW**

*/s/Charles S. Kirwan*
Charles S. Kirwan
250-F Centerville Road
Warwick, RI 02886
T: (401) 359-1166
F: (401) 336-2448
E: csk@kirwanlaw.net

**NICHOLS KASTER, PLLP**

*/s/Paul J. Lukas*
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
T: (612) 256-3200
F: (612) 215-6870
E: lukas@nka.com
   selander@nka.com

**WINEBRAKE & SANTILLO, LLC**
Peter Winebrake, PA Bar No. 841503*
R. Andrew Santillo, PA Bar No. 93041*
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
T: (215) 884-2491
F: (215) 884-2492
E: pwinebrake@winebrakelaw.com
   asantillo@winebrakelaw.com

**DONELON, P.C.**
Brendan J. Donelon, MO Bar No. 43901
802 Broadway, 7th Floor
Kansas City, Missouri 64105
T: (816) 221-7100
F: (816) 472-6805
E: brendan@donelonpc.com

*\* admitted pro hac vice*

*Counsel for Plaintiff and*
*Those Similarly Situated*

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2014, the foregoing **Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement** and attached **Brief in Support**, were filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    Charles S. Kirwan, csk@kirwanlaw.net;
    Lauren Marzullo, lmarzullo@morganlewis.com;
    Paul J. Lukas, lukas@nka.com;
    Peter Winebrake, pwinebrake@winebrakelaw.com;
    R. Andrew Santillo, asantillo@winebrakelaw.com;
    Samuel S. Shaulson, sshaulson@morganlewis.com;
    Sarah E. Bouchard, sbouchard@morganlewis.com;
    Timothy C. Selander, selander@nka.com; and
    Todd S. Holbrook, tholbrook@morganlewis.com.

Parties may access this filing through the Court's CM/ECF System.

                                                */s/Paul J. Lukas*
                                                Paul J. Lukas

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

------------------------------------------------------------
Sonya Robinson-Gibbs, on behalf of herself
and those similarly situated,

        Plaintiff,

v.	NO. 1:13-CV-00182-M-PAS

RBS Citizens, N.A., d/b/a CCO Mortgage,
Charter One, and Citizens Bank,

        Defendant.

------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF THE CLASS ACTION SETTLEMENT**

Plaintiff Sonya Robinson-Gibbs, on behalf of herself and other opt-in plaintiffs and members of the Rule 23 class (collectively, "Plaintiffs") submits this memorandum of law in support of her Unopposed Motion for Final Approval of the Class Action Settlement" (the "Motion").[1] As discussed herein, the Settlement is fair, reasonable, and adequate and warrants final approval.

**I.	BACKGROUND**

    **A.	Plaintiff's Legal Claims and Relevant Procedural History**

In light of the prior briefing in support of Plaintiff's Unopposed Motion for Preliminary

---

[1] A copy of the fully executed "Stipulation and Settlement Agreement" ("Settlement Agreement") was attached to Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement as Exhibit A. *See* Doc. 19-2

Approval of the Class Action Settlement, Plaintiff will provide only a brief summary here.[2] Sonya Robinson-Gibbs filed this case against Defendant on March 21, 2013. *See* Doc. 1. In her Complaint, Plaintiff sought overtime premium compensation under the Fair Labor Standards Act ("FLSA"). *Id.* She later amended her Complaint to add claims for overtime pay under the Ohio Minimum Wage Act ("OMFWSA"), and the Rhode Island Minimum Wage Act ("RIMWA") on behalf of herself and similarly situated home loan advisors and account executives ("HLAs") employed by Defendant, alleging they were misclassified as overtime exempt. *See* Doc. 16. Defendant's Answer denied the allegations in the Complaint, stating that it properly classified all HLAs as exempt employees under various exemptions to the overtime requirements. *See* Doc. 9 (asserting the administrative, outside sales, retail sales, executive, professional, highly compensated, and combination exemptions).

Plaintiff and eleven other individuals originally opted-in to another action against Defendant titled *Ginter, et al. v. RBS Citizens, N.A., d/b/a CCO Mortgage, Charter One, and Citizens Bank*, Case No. 1-12-cv-00008-M-PAS ("*Ginter*"). *See* Doc. 1-1. During the *Ginter* litigation, Defendant agreed to toll the statute of limitations for Plaintiff Robinson-Gibbs and the eleven other individuals beginning on the date each opted-in to *Ginter*. After the parties successfully mediated the *Ginter* case, they agreed to stay this matter and informally mediate in July 2013. *See* Minute Entry dated May 30, 2013.

  **B.** <u>**Mediation**</u>

In an effort to facilitate settlement of this matter, the parties agreed to mediate without a neutral mediator in light of the productive settlement negotiations that took place in *Ginter*, and

---

[2] Plaintiff hereby incorporates by reference Section I, "Background" set forth in her Memorandum of Law In Support of Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement. *See* Doc. 19.

5

the comparatively small number of class members and potential damages. Declaration of Paul J. Lukas ("Lukas Decl.") ¶ 3. In anticipation of the mediation, Defendant produced certain payroll data to Plaintiff's counsel including: (i) the weeks worked and annual compensation amounts for the relevant statutory period for the named and opt-in plaintiffs; and (ii) the weeks worked and number of potential Rule 23 class members for the states of Rhode Island and Ohio for the prior three years. *See* Doc. 19-1 at ¶ 4. This data, combined with estimates of hours worked by the HLAs who had joined this litigation, allowed Class Counsel to create a damages model outlining Defendant's potential exposure if the mediation was unsuccessful. *Id.*

On July 15, 2013, the parties participated in a mediation session in New York, New York. *Id.* ¶ 3. That same day, the parties executed a four-page memorandum of understanding resolving HLAs' claims under the FLSA and the respective overtime laws for the states of Ohio and Rhode Island for a total of $295,000.[3] *See* Doc. 19-2, Agreement.

### C.   **The Agreement**

The Settlement Agreement's material terms are summarized below:

#### 1.   *The Settlement Class*

For purposes of settlement only, the parties agreed to certification of the following State Law Class pursuant to Federal Rule of Civil Procedure 23(b)(3) under the laws of Ohio and Rhode Island:

> All individuals who were employed by RBS Citizens, N.A. in Ohio or Rhode Island in the position of Home Loan Advisor or Account Executive at any time between May 31, 2010, and May 1, 2011.

Doc. 19-2, Agreement at ¶ 1.37. The above class consists of 90 individuals. Lukas Decl. ¶ 4. Any individual—class member or opt-in plaintiff—who accepted the settlement by returning a

---

[3] As part of the settlement agreement, Plaintiff filed her Amended Complaint which asserted FLSA claims as well as Rule 23 claims under the OMFWSA and RIMWA. *See* Doc. 16.

claim form, released applicable state law wage and hour claims, as well as their applicable FLSA claim.  Doc. 19-2, Agreement at ¶¶ 1.35, 1.36, 2.8.2.  Class members who did not respond or opt-out released only their state law wage and hour claims.  *Id.* at ¶¶ 1.36, 2.8.1.

### 2. *The Payments*

Under the settlement, Defendant will contribute a total of $295,000 to settle this action. *See* Doc. 19-2, Agreement at ¶ 1.21.  The Agreement divides the $295,000 as follows: (i) up to $213,250 will be paid to participating Settlement Class Members representing alleged unpaid overtime compensation;[4] (ii) subject to Court approval, $3,000 will be paid as an enhancement award to Named Plaintiff Robinson-Gibbs in recognition of her efforts on behalf of the class and her enhanced litigation position; (iii) subject to Court approval, $61,600 will be paid to Class Counsel for accumulated attorney's fees;[5] (iv) subject to Court approval, $2,311.22 will be paid to Class Counsel for out-of-pocket litigation costs and expenses; and (v) $10,000 will be paid to the third-party claims administrator.[6] *Id.*

Settlement Class Members' individual payments under the Settlement are based on the number of weeks they worked as an HLA during the applicable statute of limitations period.  *See* Doc. 19-2, Agreement at ¶ 2.2.1.  To recover under the Settlement, Class Members were required to complete and timely submit a "Consent to Join the Settlement Form."  Doc. 19-2, Agreement at ¶ 2.6.3; *see also* ¶ 1.30.  Those Class Members who failed to do so are not able to recover under the Settlement.  *Id.* at ¶ 2.6.3.

---

[4] Defendant is also responsible for paying the employer's share of relevant payroll taxes.  *See* Doc. 19-2, Agreement at ¶ 2.2.3.

[5] As explained in Plaintiff's contemporaneously filed Unopposed Motion for Attorneys' Fees, Costs, and Enhancement Awards, Class Counsel seeks only the fees associated with the actual disbursements to the participating Settlement Class Members.

[6] Defendant is responsible for paying any administration costs in excess of $10,000, above and beyond the total settlement amount.  *See* Doc. 19-2, Agreement at ¶ 2.10.1.

Following the Court's Order granting this motion, the claims administrator will make payments to participating Settlement Class Members via two checks, each representing 50% of the Settlement Class Members' individual recovery: one check representing unpaid wages with appropriate taxes withheld, which will be reported on IRS Form W-2, and a second check representing liquidated damages and interest without taxes withheld which will be reported on IRS Form 1099.  *See* Doc. 19-2, Agreement at ¶ 2.2.3.

### 3. *The Release*

In exchange for the above consideration, Settlement Class Members who did not exclude themselves from the Settlement release Defendant from all state law wage and hour claims including:  (i) all state law claims pled in the Complaint; (ii) any and all claims related to overtime or overtime pay, whether known or unknown, under applicable state laws arising from employment as an HLA; (iii) any and all claims whether known or unknown and no matter how denominated, under applicable state laws for minimum wage, deductions from pay, meal and rest breaks; and retaliation; (iv) all claims for penalties under state law (including late payment penalties); and (v) liquidated damages, interest, attorneys' fees, or litigation expenses under applicable state laws.  *See* Doc. 19-2, Agreement at ¶¶ 1.35-1.36, 2.8.1, 2.8.2.  Those Settlement Class Members who timely completed Consent to Join the Settlement forms (participating Settlement Class Members) also release Defendant from any claims under the FLSA.  *Id.* at ¶ 1.35.  Importantly, Settlement Class Members did not release other types of legal claims.  *Id.*[7]

### D. **The Court Preliminarily Approved the Settlement**

On October 16, 2013, Plaintiff filed her "Unopposed Motion for Preliminary Approval of the Class Action Settlement," *see* Doc. 19, which the Court granted on October 22, 2013, *see*

---

[7] The Named Plaintiff, however, has agreed to provide Defendant with a general release.  *See* Doc. 19-2, Agreement at ¶ 2.9.4.

Doc. 24. Therein, the Court, *inter alia*: (i) conditionally certified the proposed FLSA collective action; (ii) certified proposed settlement class under the laws of Rhode Island and Ohio for settlement purposes; (iii) appointed the law firms of Nichols Kaster, PLLP, Winebrake & Santillo, LLC, and Donelon, P.C. as Class Counsel; (iv) approved Rust Consulting, Inc. ("Rust") to serve as Claims Administrator; (v) approved the Notice of Settlement ("Notice Form") and procedure for mailing it to Class Members; and (vi) set the date for the Fairness Hearing. *See* Doc. 24.

### E.     The Notice Process and Lack of Objectors

In accordance with the Court's preliminary approval order, Rust mailed the Notice Form to the Settlement Class Members on November 12, 2013. Declaration of Settlement Administrator Stacy Roe of Rust Consulting ("Rust Decl.") ¶ 10. Prior to mailing, Rust processed and updated the addresses using the National Change of Address Database maintained by the U.S. Postal Service. *Id.* ¶ 9. The Notice Form identified each Class Member's estimated individual gross recovery under the Settlement and clearly explained that Class Members retained the right to accept, exclude themselves, and/or object to the Settlement on or before January 13, 2014 (sixty days from the mailing date). *Id.* ¶ 10; s*ee also* Doc. 19-2, Ex. 1, Notice of Settlement.

The Settlement Class Members' response to the Notice was overwhelmingly positive. First and foremost, ***not one Settlement Class Member objected to or requested to be excluded from the Settlement.*** Rust Decl. ¶ 15-16. Second, over 75% of the Settlement Class Members— 68 out of 90—accepted the Settlement by completing and timely submitting a Consent to Join Settlement Form. *Id.* ¶ 14. Third, of the 90 Settlement Class Members, 12 were opt-in Plaintiffs and every single one—100%—accepted the settlement. Lukas Decl. ¶ 4.

9

## II. The Settlement Warrants Final Approval

To grant final approval, the Court must conclude that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Trial courts generally are afforded broad discretion in deciding whether to approve class action settlements. *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424-25 (1968).[8] As discussed below, the Settlement fulfills this standard and warrants final approval.

### A. The Settlement Carries a Presumption of Fairness

When reviewing class action settlements, courts are mindful of the "clear policy in favor of ***encouraging settlements***." *Durrett v. Housing Auth. of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (emphasis supplied); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."). Moreover, the First Circuit has held that "there is a presumption in favor of settlement" when the record demonstrates that "sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *accord Baptista v. Mut. of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240 (D.R.I. 2012); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 2003 U.S. Dist LEXIS 4641, *2-3 (E.D. Pa. Mar. 17, 2003) (the court should "give deference to the recommendations of experienced attorneys who have engaged in arms-length settlement negotiations.").

Here, the Settlement is entitled to a presumption of fairness. The Settlement is the product of arm's-length bargaining following the exchange of relevant payroll data and

---

[8] The Court has already approved the notice process and certified the State Law Class for settlement purposes only. *See* Docs. 24.

investigation. Moreover, Class Counsel has substantial experience litigating complex wage-and-hour class and collective actions in state and federal courts. *See* Docs. 19-1, 19-3, 19-4, 19-5 (describing counsel's experience litigating collective and class action overtime cases in federal courts throughout the country). Finally, as discussed in Section I.E. *supra*, no Settlement Class Members objected to or excluded themselves from the Settlement, further supporting a presumption of fairness.

### B. Application of the *Grinnell* Factors to the Settlement Confirms that it Should be Approved as Fair, Reasonable, and Adequate

In exercising their discretion to grant final approval to a proposed class action settlement, many courts in this circuit have relied on the "*Grinnell* Factors" set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974). These factors include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Baptista*, 859 F. Supp. 2d at 240-41 (citing *Grinnell,* 495 F.2d at 463); *see also Trombley v. Bank of Am. Corp.*, No. 08-CV-456-JD, 2013 WL 5153503, at *5 (D.R.I. Sept. 12, 2013) ("The court's assessment of whether the proposed settlement is fair, reasonable and adequate requires consideration of a variety of factors, including the terms of the settlement, the risks of litigation, the negotiation process, the reaction of the class to the settlement, and the course of litigation prior to settlement."). In sum, the "approval process 'involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" *Trombley*, 2013 WL 5153503, at *5. As discussed below, the *Grinnell* Factors weigh in favor of approving the

Settlement.

### 1. *The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Final Approval*

This factor favors approval because, absent settlement, continued litigation would require significant discovery and protracted motion practice discovery concerning, *inter alia*: (i) whether the HLAs are overtime-exempt under the FLSA and the state laws; (ii) the extent to which these HLAs actually worked overtime hours; (iii) if Defendant's alleged misclassification was "willful" for purposes utilizing the FLSA's three-year statute of limitations and seeking liquidated damages should Plaintiff prevail; and (iv) whether HLAs could proceed to trial on a class and/or collective basis. Resolution of these complex issues would substantially delay any potential payment by several years. Rather than continue further down this path, the Settlement confers a substantial and immediate benefit to Class Members in the form of an average individual recovery of $2,656.28. This factor thus weighs in favor of approval.

### 2. *The Positive Reaction of the Class to the Settlement Weighs in Favor of Final Approval*

Courts gauge the reaction of class members to a proposed settlement based on the number and substance of objections filed, as well as the number of requests for exclusion from the Settlement. *See*, *e.g.*, *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (citing *In re Painewebber P'ships Litig.,* 171 F.R.D. 104, 106 (S.D.N.Y. 1997) (noting that favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval)). Here, the reaction of the class strongly supports approval. Of the 90 Class Members, not one objected to or sought to exclude themselves from the Settlement and over 75% affirmatively accepted the terms. *See* Rust Decl. ¶¶ 14-16. This factor thus weighs heavily in favor of final approval.

### 3. *The Stage of Proceedings and the Amount of Discovery Completed.*

This factor favors approval of the Settlement because, as discussed above, settlement discussions in this matter were conducted between experienced counsel and did not occur until after the parties exchanged and reviewed substantial documents, including relevant payroll data for the opt-in Plaintiffs and State Law Class, and thoroughly analyzed the relevant merits and damages issues. Accordingly, the parties are well informed of the facts, evidence, and legal issues present in this case prior to the mediation during which the Settlement was reached.

### 4. *The High Risk Associated with Establishing Liability, Damages, and Maintaining the Class Action Through Trial Weighs in Favor of Final Approval*

The Settlement provides early relief to the opt-in Plaintiffs and Class Members, and eliminates the risks of heightened fees and expenses that the parties would otherwise bear if this litigation were to continue. As discussed in section II.B.1, *supra*, absent settlement, the parties would have engaged in extensive discovery (including written discovery and depositions) and contested FLSA conditional certification, class certification, FLSA collective decertification, and dispositive motions on merits and damages issues. Lukas Decl. ¶ 5. While Plaintiff continues to believe that she would ultimately prevail on these issues, she recognizes the inherent risk of litigation and potentially proceeding to trial. *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 902 (6th Cir. 2012) (affirming jury verdict that mortgage bankers fell within an exemption to the FLSA). By agreeing to the Settlement, those risks are eliminated and Class Members will receive and average payment of $2,656.28. Lukas Decl. ¶ 6. Similarly, Defendant continues to deny liability, but also recognizes that the attendant risks and expense of further litigation weigh in favor of the Settlement.

### 5. *The Ability of the Defendant to Withstand a Greater Judgment*

While there is no evidence suggesting that Defendant would be unable to withstand a greater judgment, this factor is irrelevant in light of the rational relationship between the total settlement amount and the overtime wages participating Settlement Class Members will receive under the Settlement. Accordingly, this factor weighs in favor of final approval.

### 6. *The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Continued Litigation Weighs in Favor of Final Approval*

The individual settlement allocations to participating Settlement Class Members are well within reason and based on their weeks worked as HLAs during the relevant period. The average payout of $2,656.28 compares favorably to other recent settlements in which employees alleged that they were misclassified as overtime-exempt. *See*, *e.g.*, *Craig v. Rite Aid Corp.*, 2013 U.S. Dist. LEXIS 2658, *23 (M.D. Pa. Jan. 7, 2013) (granting final approval to settlement in which allegedly misclassified Assistant Store Managers received average payouts of $1,845).

As discussed in section II.B.1 above, even if Plaintiff was able to proceed to trial on a class or collective basis, there would still be significant challenges to prevailing on the merits, demonstrating hours worked for purposes of damages, as well as calculating damages (likely requiring the retention and testimony of an expert). Lukas Decl. ¶ 5. In light of these challenges, as well as the delay that would have resulted from continued contested litigation, the resolution of this matter for an average settlement of $2,656.28 is extremely reasonable and weighs heavily in favor of final approval.

### 7. *The Parties' Negotiations Occurred at Arm's-Length*

Although the parties did not retain a third party mediator, it is undisputed that the Settlement was the result of arm's-length negotiations between experienced counsel for all

parties, and occurred after more than sufficient information had been exchanged. Thus, this factor weighs in favor of final approval.

### III. CLASS CERTIFICATION SHOULD BE MAINTAINED FOR SETTLEMENT PURPOSES

The Court certified the FLSA Collective Action and the State Law Class in its Order preliminary approving the Settlement. *See* Doc. 24. For the same reasons provided in Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement, *see* Doc. 19, the Court should maintain certification of the State Law Class and FLSA Collective.

### IV. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS

As discussed in Plaintiff's concurrently filed Unopposed Motion for Attorneys' Fees, Costs, and Enhancement Awards, Plaintiff requests that the Court, consistent with the parties' Settlement, award $61,600 in attorneys' fees (20% of the total settlement amount), $2,311.22 in attorney costs, and $3,000 in enhancement awards to the Named Plaintiff, Sonya Robinson-Gibbs. These awards are fair, reasonable, and consistent with awards in similar cases in the First Circuit. *See, e.g.*, *Nash v. CVS Caremark Corp.*, 1:09-cv-00079-M-LDA (D.R.I. Apr. 9, 2012) (approving 25% award of attorneys' fees and incentive awards of $5,000 to each named plaintiff).[9]

### V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Proposed Final Approval Order attached hereto as Exhibit A.

---

[9] Attached as Exhibit B.

Dated:  January 23, 2014 **CHARLES S. KIRWAN, ATTORNEY AT LAW**

*/s/Charles S. Kirwan*
Charles S. Kirwan
250-F Centerville Road
Warwick, RI 02886
T:  (401) 359-1166
F:  (401) 336-2448
E:  csk@kirwanlaw.net


**NICHOLS KASTER, PLLP**

*/s/Paul J. Lukas*
Paul J. Lukas, MN Bar No. 22084X*
Tim C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
T:  (612) 256-3200
F:  (612) 215-6870
E:  lukas@nka.com
    selander@nka.com

**WINEBRAKE & SANTILLO, LLC**
Peter Winebrake, PA Bar No. 841503*
R. Andrew Santillo, PA Bar No. 93041*
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
T:  (215) 884-2491
F:  (215) 884-2492
E:  pwinebrake@winebrakelaw.com
    asantillo@winebrakelaw.com

**DONELON, P.C.**
Brendan J. Donelon, MO Bar No. 197776
420 Nichols Road, Suite 200
Kansas City, MO  64112
T:  (816) 221-7100
F:  (816) 472-6805
E:  brendan@donelonpc.com

*admitted pro hac vice

***Counsel for Plaintiff and***
***Those Similarly Situated***