UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

---

Sonya Robinson-Gibbs, on behalf of herself
and those similarly situated,

        Plaintiff,

v.                                                                                  NO. 1:13-cv-00182-M-PAS

RBS Citizens, N.A., d/b/a CCO Mortgage,
Charter One, and Citizens Bank,

        Defendant.

---

## DECLARATION OF PAUL J. LUKAS

I, Paul J. Lukas, hereby declare:

    1.    I am a partner with the law firm of Nichols Kaster, PLLP, which is Class Counsel in the above-captioned matter.

    2.    I make this Declaration in support of Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, and Enhancement Awards.

    3.    Class Counsel's work in this case resulted in the total settlement amount of $295,000. After deductions for the requested attorneys' fees and costs, and settlement administration costs, 61% of the total settlement—$180,626.89—will be distributed to the 68 participating Home Loan Advisors and Account Executives ("HLAs"), for an average settlement payment of approximately $2,656.28. No class member objected to the settlement, and no class member opted-out. There were a total of 90 HLAs eligible to participate. The Settlement funds initially allocated to the 22 unresponsive Settlement Class Members totaled $35,623.11 and

1

revert to Defendant per the terms of the Agreement. *See* Doc. 19-2, Agreement at ¶ 2.2.1. Class Counsel do not seek to recover attorneys' fees related to any unclaimed funds.

## NICHOLS KASTER'S QUALIFICATIONS

4.     Donald H. Nichols founded the law firm now known as Nichols Kaster in 1974. The Firm currently employs thirty-two (32) attorneys and forty-three (43) staff members in offices in Minneapolis, Minnesota and San Francisco, California. Since 1994, the Firm has almost exclusively represented employees and consumers in civil litigation.

5.     Nichols Kaster was named to the National Law Journal's 2011 Litigation Boutiques Hot List for its attorneys' courtroom abilities. Nichols Kaster has also been ranked as a Best Law Firm by U.S. News & World Report, as a top plaintiffs' employment law firm by Law360, and by Minnesota Lawyer as one of Minnesota's Top 100 Law Firms. In 2009, Nichols Kaster was ranked as one of the top ten busiest FLSA firms in the country by Litigation Almanac 360, which conducted a study of over 500,000 federal cases and received input from more than 200 law firms. Nichols Kaster was the only plaintiffs' firm in the top ten. Nichols Kaster received a First Tier ranking on the 2014 Best Law Firms list in Minneapolis for Litigation-Labor and Employment by US News-Best Lawyers in November 2013. On Martindale Hubbell, the firm has a 5 out of 5 peer rating. In a recent CityPages article regarding one of the firm's cases, Nichols Kaster was described as "one of the top employment firms in the country." Olivia LaVecchia, *The Perfect Victim: Exploitation and Threat of Deportation*, CityPages, May 29, 2013.

6.     The Firm is currently lead or co-counsel in more than 120 class or collective actions in state and federal courts across the country, many of which have been certified as collective or class actions. As detailed in the attached Firm Resume (Ex. C), the firm has been

appointed class counsel or served as counsel for a FLSA collective in hundreds of class and collective actions throughout its years of practice.  Recent cases include: *McKeen-Chaplin v. Provident Savings Bank, FSB*, No. 2:12-cv-03035-GEB-JFM (E.D. Cal. Aug. 12, 2013); *Williams v. U.S. Bank Nat. Ass'n*, CIV. S-12-1907 LKK, 2013 WL 3119055 (E.D. Cal. June 20, 2013); *Long v. CPI Security Systems, Inc.*, No. 3:12-cv-00396, 2013 WL 2154801 (W.D.N.C. May 17, 2013); *Latham v. Branch Banking & Trust Company*, No. 1:12-cv-00007 (M.D.N.C. Nov. 13, 2012); *Ruffin v. Entertainment of the Eastern Panhandle, Inc.*, No. 3:11-cv-00019, 2012 WL 5472165 (N.D. W.Va. Nov. 9, 2012); *Spar, et al. v. Cedar Towing & Auction, Inc.*, Case No. 27-CV-11-24993 (Minn. Dist. Ct., Oct. 16, 2012); *Heibel v. U.S. Bank, N.A.*, No. 11-00593, 2012 WL 4463771 (S.D. Ohio, Sept. 27, 2012); *Kiessel v. The Corvus Group, et al.*, No. 12-390 PAG (N.D. Ohio, July 6, 2012); *Myles v. Prosperity Mortgage Co.*, No. Civ. CCB-11-1234, 2012 WL 1963390 (D. Md., May 31, 2012); *Calderon v. Geico Gen. Ins. Co.*, 279 F.R.D. 337 (D. Md., Feb. 14, 2012); *Baker v. Clear Wireless, LLC*, No. 11-401 (N.D. Fla. Jan. 20, 2012); *Swigart v. Fifth Third Bank*, 276 F.R.D. 210 (S.D. Ohio, Aug. 31, 2011) (granting conditional certification) and 288 F.R.D. 177 (S.D. Ohio 2012) (granting Rule 23 class certification); *Sliger v. Prospect Mortgage, LLC*, No. 11-465-LKK, 2011 WL 3747947 (E.D. Cal. Aug. 24, 2011).

7. Nichols Kaster's second nationwide wage-and-hour case was *Casas v. Conseco Finance Corporation*, in which the firm represented nearly 2,900 current and former loan officer employees from across the country.  After several years of discovery and litigation, the Court granted the plaintiffs' motion for summary judgment on the employer's liability, holding that the retail sales, outside sales, and administrative exemptions did not cover loan officers.  *Casas v. Conseco Fin. Corp.*, 2002 WL 507059 (D. Minn. March 31, 2002).  The reasoning of the Court's

3

order was later adopted by the United States Department of Labor in its 2004 revisions to the FLSA regulations on the administrative exemption and codified at 29 C.F.R. 541.203(b). *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01, 2004 WL 865626 (Department of Labor Wage and Hour Division, April 23, 2004). The holding was again adopted in the Department of Labor's March 24, 2010 Administrator's Interpretation No. 2010-1.

       8.      In addition to the significant monetary recoveries the Firm has obtained for our clients, Nichols Kaster's wage-and-hour litigation has also resulted in significant developments in the law. As mentioned *supra*, the *Conseco* decision was adopted by the Department of Labor in its 2004 revisions to the FLSA regulations, its holding was codified at 29 C.F.R. 541.203(b), and it was again adopted in the Department of Labor's March 24, 2010 Administrator's Interpretation No. 2010-1. In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), Nichols Kaster represented a plaintiff who was fired for making oral complaints to management about the company's timekeeping practices. The district court granted the employer's motion for summary judgment, holding that the employee's complaint was not protected. The Seventh Circuit affirmed. Nichols Kaster appealed to the United States Supreme Court, which reversed, holding that "an oral complaint of a violation of the Fair Labor Standards Act is protected conduct under the [Act's] anti-retaliation provision." This decision set a new standard for FLSA anti-retaliation claims. More recently, in *Calderon v. GEICO*, Judge Titus granted our motion for summary judgment on the employer's liability, holding that insurance investigators did not qualify for the administrative exemption. 917 F. Supp. 2d 428 (D. Md. 2012).

9. I was admitted to practice in 1991. I received a B.A. from Saint John's University and a J.D. from William Mitchell College of Law. I am a member of the bar in the State of Minnesota and the State of New York. I am admitted to practice in the following federal district courts: District of Colorado, Northern District of Illinois, Eastern District of Michigan, Western District of Michigan, District of Minnesota, Northern District of New York, Western District of New York, Western District of Oklahoma, Western District of Tennessee, Western District of Texas, Western District of Wisconsin, and Eastern District of Wisconsin. I am also admitted to practice in the Sixth, Eighth, and Ninth Circuit Courts of Appeals. I have tried close to fifty cases to verdict, including two FLSA collective actions. I have represented loan officers in litigation to recover overtime pay in at least 42 different cases. I frequently speak at conferences regarding the FLSA and class and collective litigation. Within the past few years, I have given speeches at meetings of the ABA, the National Employment Lawyers Association, the Practicing Law Institute, the American Conference Institute, and local bar associations across the country, including the Metropolitan Washington Employment Lawyers Association, the Ohio Association for Justice, the Minnesota Employment Lawyers Association, the Maine Employment Lawyers Association, the Illinois Employment Lawyers Association, and the Tennessee Employment Lawyers Association. My hourly rate throughout the litigation was $550.

10. Timothy C. Selander is an eighth year associate attorney with Nichols Kaster. He received a B.A. from the University of Wisconsin-Madison in 2002 and a J.D. from William Mitchell College of Law in 2006. He has worked for Nichols Kaster since 2002, starting as a class action clerk. In that position he spent the vast majority of his time interviewing loan officers who had joined or were considering joining one of Nichols Kaster's collective action cases for unpaid overtime wages. During law school, he worked as a law clerk for James H.

Kaster, a partner with Nichols Kaster. He was admitted to the bar of the State of Minnesota in 2006 and the bar of the State of Florida in 2007. As an attorney, he has represented thousands of employees in dozens of class and collective actions for overtime pay. Among the cases he has worked on are at least fourteen class and collective actions brought on behalf of loan officers like those in this case. He is admitted to practice in the Fourth Circuit and Eighth Circuit Court of Appeals and the United States District Courts for Minnesota, Colorado, Florida (Southern, Middle, and Northern Districts), Illinois (Northern District), Michigan (Eastern and Western Districts), and Wisconsin (Eastern and Western Districts). He is a member of the ABA, the Minnesota State Bar Association, the Florida Bar, the Federal Bar Association, the Hennepin County Bar Association, the National Employment Lawyers Association and its Minnesota chapter. In 2012 he was recognized by his peers in the Minnesota legal community as a "Rising Star" and in 2013 as a "Super Lawyer." His hourly rates during the litigation were $300 (2012) and $325 (2013).

      11.     G. Tony Atwal is an associate in Nichols Kaster's Wage and Hour Litigation Team and he represents employees in a variety of disputes, including matters involving unpaid overtime wages, minimum wages, and recovery of commission payments. Prior to joining Nichols Kaster in 2013, Tony worked as an appellate attorney, litigating over 100 appellate cases, and he brings this extensive experience to his practice at Nichols Kaster. Tony is also an Adjunct Professor of Law at William Mitchell College of Law, where he teaches appellate advocacy.

## NICHOLS KASTER'S CLASS ACTION TEAMS

      12.     Several staff members, including paralegals, law clerks, and class action clerks worked on this file. The hourly rate for these staff members was $175 throughout the litigation.

As explained more fully below, the work of these employees was integral to the success of the case.

13. At Nichols Kaster we assign each wage-and-hour case a team consisting of attorneys and staff. The size and makeup of the team will vary based on the size and complexity of the case, but generally each case is assigned a partner, an associate attorney, a paralegal, and a class action clerk. Additional attorneys and staff are consulted or assigned work as needed throughout the litigation. Although 15 staff members worked on this case at various points, the high number was due to turnover and not duplicative work or overstaffing. A chronological review of the billable records attached hereto as Exhibit A bears out this conclusion.

14. The class action clerk position is somewhat unique to Nichols Kaster. Our class action clerks are talented and capable employees who are crucial to our success in prosecuting wage-and-hour class and collective actions. They are all college graduates, and many have gone on to become successful attorneys. Given that there are four law schools within ten miles of our Minneapolis office, the talent pool for class action clerks is deep. Several, including Timothy Selander, have gone on to become law clerks and later attorneys with Nichols Kaster.

15. Our class action clerks perform several vital functions. First and foremost, they act as the conduit for information between our attorneys and clients. This responsibility begins prior to the filing of the complaint and continues throughout the litigation and even after settlement. In this role, the class action clerks are responsible for interviewing each client, updating the clients on the status of the case, scheduling and setting up meetings and depositions, and obtaining documents, including declarations, interrogatory responses, responses to document requests, and in the settlement context, releases and/or claim forms.

7

16.     Class action clerks also participate in strategy meetings, assist attorneys in the review of documents, assist attorneys in drafting discovery responses and declarations, prepare for depositions, prepare and mail update letters and emails, and prepare document productions. Others have more specialized duties, such as document management and assisting attorneys with damage calculations and settlement allocations.

17.     Managing a group of plaintiffs with varying levels of interest is challenging. Unlike plaintiffs in individual cases involving claims of wrongful termination, plaintiffs in wage-and-hour class and collective actions often have much less at stake in the litigation, both monetarily and emotionally. In our experience, the most successful cases are the cases in which the plaintiffs are active and engaged.  Accordingly, we train our class action clerks to cultivate individual relationships with each plaintiff so that the plaintiffs are invested and prepared to assist us in the prosecution of the case. This primarily occurs through phone calls, emails, update letters, and web updates. In these updates, we encourage the clients to call or email our class action clerks with questions or concerns about the litigation. The class action clerks are then primarily responsible for promptly returning these calls and emails.

**THE WORK PERFORMED BY CLASS COUNSEL ON THIS CASE**

18.     It is Nichols Kaster's practice to maintain detailed and contemporaneous records of all billable case work performed by attorneys and staff.

19.     Nichols Kaster attorneys, particularly Timothy C. Selander and G. Tony Atwal, along with several staff members, performed the bulk of the work, and efforts were made to ensure that Class Counsel did not perform duplicative work. In total, Nichols Kaster spent 130.7 hours on this matter through December 27, 2013.  The firm's total lodestar through that date $42,360.

20. Class Counsel's attorneys and staff performed a number of different tasks prior to the filing of the Complaint and throughout the litigation, including:

  a) Investigating the potential claims against Defendant by reviewing documents, conducting research, and participating in telephone conferences with Plaintiff Robinson-Gibbs and other HLAs;

  b) Drafting and editing the Complaint and other pleadings throughout the litigation, including Plaintiff's Rule 16 Statement (Doc. 14), briefing Plaintiff's Motion for Conditional Certification and Judicial Notice (not filed), and the Preliminary and Final Settlement Approval motions.

  c) Conducting legal research;

  d) Interviewing the 12 opt-in Plaintiffs;

  e) Reviewing and analyzing documents produced by opt-in Plaintiffs;

  f) Reviewing and analyzing data to calculate the overtime damages in preparation for mediation and later, for allocation approval purposes;

  g) Regularly meeting to discuss the status of the case and strategy for moving forward;

  h) Preparing for mediation by analyzing the facts and law of the case, as well as the strengths and weaknesses of Plaintiff's claims and Defendant's defenses;

  i) Attending the mediation and engaging in weeks of follow up negotiations in order to finalize the settlement;

  j) Reviewing and revising the proposed settlement allocations;

  k) Drafting, researching, and editing the settlement papers; and

l) Communicating with Class Members during the settlement notice period, resulting in 100% of the opt-in Plaintiffs accepting the settlement, 72% of the Rule 23 class members accepting the settlement, and no Class Members objecting or requesting to be excluded.

21. If the Court grants Plaintiff's Unopposed Motion for Final Approval, attorneys and staff assigned to the case will continue to communicate with the participating Class Members to ensure that they receive the settlement payments, negotiate them prior to the expiration date, and into 2015, ensure that they receive the associated tax documents.

## THE CONTINGENCY FEE AGREEMENT

22. Prior to filing this case Class Counsel entered into a typical contingency fee agreement with Plaintiff Robinson-Gibbs. Under the terms of the agreement, Class Counsel agreed to carry all attorneys' fees and costs incurred in the prosecution of the case. In exchange, Class Counsel would receive up to 33 ⅓ % of any recovery, in addition to reimbursement of necessary and reasonable costs associated with the prosecution of the case. The agreement also states that Class Counsel will receive nothing if it ultimately fails to secure a monetary recovery.

23. Class Counsel routinely enter into similar fee agreements with the same contingency rate with named plaintiffs in other wage-and-hour class and collective action lawsuits.

24. Due to the large investment of time, energy, and resources that are necessary to litigate these cases, and due to the risk of no recovery (and thus no payment for the hours spent litigating the case and no reimbursement of costs), Class Counsel would be unable to take on these cases without a contingent fee arrangement. Similarly, the Named Plaintiff in this case (or

the named plaintiff in almost any case) would not have been able to pay Class Counsel or any attorney an hourly fee to litigate his claims.

25. If this case had not settled, Plaintiff would have faced a number of factual, procedural and legal hurdles, including:

> Conditional Certification: Defendant would have opposed Plaintiff's motion for FLSA conditional certification;
>
> Decertification: Defendant would have moved to decertify the FLSA collective, which if successful, would have forced each of the opt-in Plaintiffs to re-file an individual action in order to pursue their claims;
>
> Class Certification: Defendant would have opposed Plaintiff's attempt to certify state law classes under Rule 23, which if successful would have eliminated the claims of more than 78 Rule 23 Class Members;
>
> Summary Judgment: Defendant intended to file motions for summary judgment as to its liability (the application of the outside sales exemption, among others), and the limits of Plaintiff's damages (willfulness and liquidated damages);
>
> Daubert Motions: In order to prove their damages, Plaintiff may have required the assistance of an expert, whose report and testimony would have been subject to disqualification motion;
>
> Trial: If Plaintiff survived decertification and summary judgment, the jury could have ruled in Defendant's favor, or otherwise limited Plaintiff's damages; and
>
> Appeal: If Plaintiff prevailed at trial, Defendant would have likely appealed, potentially delaying resolution of the case for months, if not years.

26. Given these risks, Class Counsel would not have accepted a similar case on any basis other than a contingency fee basis, and it is unlikely that the Named Plaintiff would have been able to retain attorneys under any other arrangement. The contingency fee arrangement, however, allowed Class Counsel to prosecute and finance this litigation for as long as necessary.

27. Nichols Kaster has prosecuted many class and collective wage-and-hour cases for years without receiving any remuneration. For example:

***Henry v. Quicken Loans, Inc.*, No. 04-cv-40346 (E.D. Mich. *filed* May 17, 2004):*** Nichols Kaster represented more than 400 loan officers for eight years over the very issue in this case: whether loan officers are exempt employees. The parties filed dozens of motions, retained experts, conducted ESI discovery, tried, and appealed the case. In March 2011 the case was tried to a jury. After five weeks of trial and 2.5 days of jury deliberations, the jury found for the defendant. The verdict and other decisions from the case were later affirmed by the Sixth Circuit.

***Pontius v. Delta Fin. Corp.*, No. 04-1737 (W.D. Pa. *filed* Nov. 12, 2004):*** Nichols Kaster represented 180 loan officers in a lawsuit for overtime pay. As in *Quicken*, the primary issue was the exempt status of the defendant's loan officers. After more than three years of litigation the defendant filed for Chapter 11 Bankruptcy protection. The matter ultimately settled in bankruptcy court and Nichols Kaster recovered a small fraction of the total attorneys' fees spent on the litigation.

***Epps v. Oak Street Mortgage, LLC*, No. 04-cv-46 (M.D. Fla. *filed* Feb. 2, 2004):*** Nichols Kaster represented loan officers seeking overtime pay under the FLSA. After the court denied the plaintiffs' motion for conditional certification, the opt-in plaintiffs filed 24 separate collective actions in district courts across the country. After more than three years of litigation, the defendant filed for Chapter 11 Bankruptcy protection. Nichols Kaster did not recover any attorneys' fees.

28. At the time the complaint was filed, there was no indication that a settlement would be reached or that the outcome of litigation would be successful. Class Counsel have not been compensated for any time or expense since the litigation began.

## CONTRIBUTIONS BY THE NAMED PLAINTIFF

29. This lawsuit would not have been filed, and this settlement would not have been reached, but for the actions of the Named Plaintiff. Plaintiff Robinson-Gibbs acted when others did not. The significance of this cannot be understated. As a plaintiff-side employment law attorney, it is my experience that employees—whether current or former—are often concerned about having a lawsuit filed in their name will negatively impact their ability to find employment in the future. Again, in my experience, many individuals choose not to file meritorious lawsuits for this very reason. These concerns have some merit, particularly in light of the public nature of

federal litigation, where any current or potential employer can search the internet (PACER) to find information about potential employees, including whether they have filed for bankruptcy protection or been party to a lawsuit. Plaintiff Robinson-Gibbs continue to work in the mortgage industry, albeit with a different employer, increasing the possibility that her future employment could be impacted by their decision to act as a named plaintiff. Despite these risks, she chose to go forward. Her efforts to aid Class Counsel in the prosecution of her claims and the claims of the class continued after she filed the Complaint, and through the date of settlement. Throughout the litigation she assisted my colleagues and me whenever we asked, including the production of documents, information, and declarations. She answered our calls and emails immediately and without fail. As a result of her actions, the eleven opt-in Plaintiffs and Rule 23 Class Members will receive a substantial benefit. In short, without her efforts, this case would not have been brought and this settlement would not have been achieved.

30. Attached as Exhibit B are Nichols Kaster's itemized costs in this matter. As these records indicate, Nichols Kaster incurred costs related to court fees, legal research, PACER searches, postage, and travel and accommodations for the mediation totaling $1,995.01.

31. Attached hereto are true and correct copies of the following exhibits:

Exhibit A:   Nichols Kaster's Billable Time Entries;

Exhibit B:   Summary of Class Counsel's Costs and Nichols Kaster's Itemized Costs;

Exhibit C:   Order in *Nash v. CVS Caremark Corp.*, 1:09-cv-00079-M-LDA (D.R.I.) dated April 9, 2012;

Exhibit D:   Order in *Cristy v. Constant Contact, Inc.*, No. 1:12-cv-11457-GAO (D. Mass.) dated November 19, 2013;

Exhibit E:   Order in *Garcia v. East Coast Cable & Commc'n, Inc.*, No. 08-30009-KPN (D. Mass.) dated December 10, 2009;

  Exhibit F: Order in *Olmeda v. AM Broadband, LLC*, No. 06-30051-KPN (D. Mass.) dated October 14, 2009;

 Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of January, 2014   */s/Paul J. Lukas*
                     Paul J. Lukas